UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

MICHIGAN DEPARTMENT OF HEALTH & HUMAN SERVICES; and AMY EPKEY, in her Official Capacity as Acting Director of the Michigan Department of Health & Human Services,

Defendants.

No. 1:26-cv-01950

HON. HALA Y. JARBOU

MAG. MAARTEN VERMAAT

---

**DEFENDANTS' MOTION TO STAY UNDER THE FIRST-TO-FILE RULE**

For the reasons set forth in the accompanying brief, Defendants respectfully request this Court stay proceedings under the first-to-file rule and hold this case in abeyance pending final disposition of *California, et al. v. United States Department of Agriculture, et al.*, No. 3:25-cv-06310 (N.D. Cal.).

Respectfully submitted,

/s/ Neil Giovanatti
Daniel Ping (P81482)
Neil Giovanatti (P82305)
Attorneys for Defendants
Civil Rights & Special Initiatives Division
525 W. Ottawa St.
P.O. Box 30736
Lansing, MI 48909
(517) 241-1050
PingD@michigan.gov
GiovanattiN@michigan.gov

Dated: August 21, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on August 21, 2026, I electronically filed the above document using the ECF System which will send notification of such to all represented parties.

/s/ Neil Giovanatti
Neil Giovanatti (P82305)
Assistant Attorney General

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

MICHIGAN DEPARTMENT OF HEALTH & HUMAN SERVICES and AMY EPKEY, in her Official Capacity as Acting Director of the Michigan Department of Health & Human Services,

Defendants.

No. 1:26-cv-01950

HON. HALA Y. JARBOU

MAG. MAARTEN VERMAAT

---

**<u>BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO STAY UNDER THE FIRST-TO-FILE RULE</u>**

Daniel J. Ping (P81482)
Neil Giovanatti (P82305)
Attorneys for Defendants
Michigan Dep't of Attorney General
Civil Rights & Special Initiatives Division
525 W. Ottawa St.
P.O. Box 30736
Lansing, MI 48909
(517) 241-1050
PingD@michigan.gov
GiovanattiN@michigan.gov

Dated: August 21, 2026

## TABLE OF CONTENTS

Page

Table of Contents ........ 1

Introduction ........ 2

Statement of Facts ........ 3

Argument ........ 5

I. This Court should apply the first-to-file rule and stay this case. ........ 5

  A. The instant suit was filed after the first-filed case. ........ 6

  B. The parties are sufficiently similar to support a stay. ........ 7

  C. The issues are sufficiently similar to support a stay. ........ 10

  D. Other equitable considerations support a stay. ........ 15

Conclusion and Relief Requested ........ 17

Certificate of Compliance ........ 18

Certificate of Service ........ 18

## INTRODUCTION

Usually, a first-to-file motion involves only two lawsuits. This set of cases is different. Its posture is a hub-and-spoke arrangement, with the first-filed case in the U.S. District Court for the Northern District of California comprising over twenty states' identical claims against the same agency, which agency later caused the U.S. Department of Justice to file four original actions, each of which is simply a continuation of ongoing proceedings in the first-filed case.

Michigan and the other plaintiffs asked the Northern District of California court to fashion a unique remedy befitting this unique posture, *i.e.*, to enjoin the prosecution of the duplicative, offshoot cases, including this one. That court balked at this remedy—explicitly *not* because the first-to-file rule's three-part test was unmet—but *only* because of the court's comity considerations, reflecting discomfort with issuing relief beyond the borders of its district. (Ex. A, Order Denying Plaintiffs' Motion to Enjoin Prosecution of Related Cases.)

Accordingly, Michigan asks this Court to apply the first-to-file rule in its traditional context. Where, as here, actions involving nearly identical parties and issues have been filed in two different district courts, the second-filed case should be stayed while the first case proceeds to a full adjudication of the overlapping issues. The rule exists for circumstances just like this one, where one party's decision to rush to another forum is certain to engender duplicative efforts and likely to engender chaotic, inconsistent results.

Because the first-to-file rule's criteria are met, Michigan respectfully asks this Court to stay proceedings until the Northern District of California action reaches final disposition.

## STATEMENT OF FACTS

Since May 2025, the U.S. Department of Agriculture (USDA) has been demanding that Michigan produce highly sensitive personal information concerning anyone who applied for or received Supplemental Nutrition Assistance Program (SNAP) benefits since 2020. (See PageID.43–70, 88–114, 147–165, 186–200, 208–215, Compl. Exs. 1–7, 9–10, 12, 15, 17.) Michigan opposes production because federal law strictly limits the disclosure and use of this information, 7 U.S.C. § 2020(e)(8), and USDA has never been willing to bring the terms of its serial demands within those statutory limits.

Regarding events prior to Michigan filing its opposition to the Government's motion for a preliminary injunction in the instant case, Michigan incorporates that brief's statement of facts. (ECF No. 23, PageID.397–407.) In essence, the First SNAP Data Suit, *California v. USDA*, Case No. 2:25-cv-06310 (N.D. Cal.), examined the lawfulness of USDA's demands, which was not limited to whether USDA could withhold funds from States for noncompliance. Rather, the First SNAP Data Suit—having already resulted in a ruling that a reasonable, agreed-upon security protocol is a prerequisite to data disclosure—is now focused on the reasonableness of the Plaintiff States' objections. (See also Ex. B, 8/14/26 Hr'g Tr., p. 12 ("[T]he current posture of the [First SNAP Data Suit] is not a threat to withhold funds[.]").) And,

importantly, the Government's counsel has confirmed that the most recent data protocol USDA proposed in the First SNAP Data Suit on March 30, 2026, is materially identical to the proposal attached to the May 15 Third Records Request. (*Id.* at 10.) Based on the nearly identical nature of the First SNAP Data Suit and the instant suit (and similar individual suits against Kentucky, Minnesota, and Pennsylvania, collectively with the instant case, the "Later-Filed Suits"), the plaintiff states moved under the first-to-file rule to enjoin the prosecution of the Later-Filed Suits. (See Ex. C, Plaintiff States' Motion to Enjoin Prosecution of Related Cases.)

On July 22, 2026, Michigan moved this Court for a temporary stay of the instant case pending the Northern District of California court's resolution of Plaintiff States' first-to-file motion. (ECF No. 15.) That motion sought a stay under this Court's general authority, not the first-to-file rule. This Court denied the motion on August 7, 2026. (ECF No. 22.) In its decision, the Court denied the stay in part because (a) at that point, the Court did not know when the California court would act on the first-to-file motion filed in that matter and (b) opposing the preliminary injunction motion would "not impose a great hardship" on Michigan. (PageID.388.) With that stay request denied, Michigan timely filed its opposition to the preliminary injunction motion on August 10, 2026. (ECF No. 23.)

Yesterday, on August 20, 2026, the California court denied the plaintiff states' first-to-file motion. (See Ex. A, Order Denying Plaintiffs' Motion to Enjoin Prosecution.) In its decision, the California court explicitly held that the plaintiff

states met the three traditional factors of a first-to-file motion: (1) chronology of the lawsuits, (2) similarity of parties; and (3) similarity of issues. (*Id.* at 4–6.) Despite meeting these factors, the court denied the motion solely based on comity considerations, finding the requested injunction "would interfere with proceedings pending in four other federal district courts, which courts are located in three other circuits." (*Id.* at 7.) The California court concludes that the four states subject to the Later-Filed-Suits "remain free to bring a first-to-file motion." (*Id.*) Michigan takes that offer through this motion.

**ARGUMENT**

For the reasons below, this Court should stay this case pending the resolution of the First SNAP Data Suit.

## I. This Court should apply the first-to-file rule and stay this case.

The first-to-file rule is "a prudential doctrine that grows out of the need to manage overlapping litigation across multiple districts." *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 789 (6th Cir. 2016). It provides that, "when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed should generally proceed to judgment." *Id.* (quoting *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 551 (6th Cir. 2007)). In addition to preserving comity among federal courts of equal rank, the rule protects judicial resources from being wasted

on duplicative litigation, and it "protects the parties and the courts from the possibility of conflicting results." *Id.* (citation omitted).

In applying the first-to-file rule, "courts generally evaluate three factors: (1) the chronology of events, (2) the similarity of the parties involved, and (3) the similarity of the issues or claims at stake." *Id.* (citation omitted). If these factors point toward a stay, courts then ask whether any equitable considerations, such as evidence of "inequitable conduct, bad faith, anticipatory suits, [or] forum shopping" suggest that a first-to-file stay is, in fact, inequitable. *Certified Restoration*, 511 F.3d at 551–52 (quoting *Zide Sport Shop of Ohio v. Ed Tobergte Assoc., Inc.*, 16 F. App'x 433, 437 (6th Cir. 2001)). Whether to grant the stay is a matter of this Court's discretion. *Ohio Env't Council v. U.S. Dist. Ct.*, 565 F.2d 393, 396 (6th Cir. 1977).

As the California court held yesterday (Ex. A, pp. 4–6), each of the three first-to-file factors—as well as other relevant equitable considerations—supports a stay.

**A. The instant suit was filed after the first-filed case.**

The chronology-of-events factor "simply asks which of the two overlapping cases was filed first." *Baatz*, 814 F.3d at 790. There is no difference between a case filed nine *days* after the first and one filed nine *months* after the first. *See, e.g.*, *Innovation Ventures, L.L.C. v. Custom Nutrition Laboratories, L.L.C.*, 534 F. Supp. 2d 754, 756 (E.D. Mich. 2008) (observing that time period between filings can be called "de minimis" for purposes of this factor only "if the difference were a matter of hours"). When the other two factors support a stay, the mere fact that one

complaint preceded the other "favors applying the first-to-file rule." *Baatz*, 814 F.3d at 790. Here, Michigan filed its case against USDA on July 28, 2025. By any measure, the instant case was filed later, on June 26, 2026. This factor supports a stay. (See Ex. A, p. 4.)

When Michigan asked for a temporary stay in this Court, the Government argued that the "chronology of events" factor would not be satisfied because, when the First SNAP Data Suit was filed, USDA had no cause of action regarding the May 15, 2026, Third Records Request. (PageID.358.) This argument conflates the first and third factors of a first-to-file motion, and elevates form over substance, which an equitable inquiry lays bare. This Court need look no further than the Complaint, whose allegations are inextricable from the parties' course of dealing, both in and out of the Northern District of California. Regardless, when courts are faced with this kind of argument, *Baatz* instructs that it is appropriate to set this factor aside until the analyses of the other two factors can be plugged in. 814 F.3d at 790. Once it's understood that the issues and parties are sufficiently similar, a court will have an easy time of concluding that one case preceded the other.

### B. The parties are sufficiently similar to support a stay.

The second factor considers the similarity of the parties involved. "The first-to-file rule applies when the parties in the two actions 'substantially overlap,' even if they are not perfectly identical." *Baatz*, 814 F.3d at 790 (quoting *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950–51 (5th Cir. 1997) (brackets removed)). "Courts generally hold that privity or affiliation between/among defendants is

sufficient to find 'substantial overlap.'" *Aero Adv. Paint Tech., Inc. v. Intl. Aero Products, LLC*, 351 F. Supp. 3d 1067, 1071 (S.D. Ohio 2018) (citations omitted).

Contrary to Plaintiff's position, the similarity-of-the-parties factor is satisfied. The named defendants in the First SNAP Data Suit are USDA—that is, the *United States* Department of Agriculture—and its secretary, whereas the plaintiff here is the United States. That's a distinction without a difference for purposes of the first-to-file rule. As a general, obvious matter, federal agencies are deemed to be in privity with the United States. *See Nat. Res. Def. Council v. EPA*, 38 F.4th 34, 57 n.18 (9th Cir. 2022); *see also Ma Chuck Moon v. Dulles*, 237 F.2d 241, 243 (9th Cir. 1956) (finding privity between the U.S. Secretary of State and the Attorney General for res judicata purposes because the actions at issue were "in effect suits against the United States"); *United States v. Techno Fund, Inc.*, 270 F. Supp. 83, 84–85 (S.D. Ohio 1967) ("[T]he United States is the real party in interest in cases involving federal agencies[.]"). USDA's own name describes it as a subdivision of the United States. *See also* "Department," Merriam-Webster Online Dictionary ("a functional or territorial division: such as . . . a major administrative division of a government").[1]

Indeed, the instant suit was filed *at the request of and on behalf of* USDA. (See PageID.5–6, 34, Compl. ¶¶ 13, 78.) The United States has not brought any cause of action here that did not require USDA's referral. And USDA's unlawful

[1] Available at https://www.merriam-webster.com/dictionary/department.

demands for SNAP data are part of the same project in which the Department of Justice was involved long before the instant suit was filed.[2]

The Complaint confirms that the United States is acting on behalf of USDA. (E.g., PageID.36, Compl. ¶ 84.) Whereas "United States" appears only five times in the Complaint, "USDA" appears over 200 times. Allegations of injury refer to USDA. (E.g., PageID.5, Compl. ¶ 9 ("The records that USDA requested Defendants produce are necessary to fulfill its statutory responsibilities[.]").) The Complaint even refers to the Secretary of Agriculture as "Plaintiff." (PageID.38, Compl. ¶ 91.) Thus, for all intents and purposes, the two federal parties are one and the same.

Similarly, on the other side of the "v," the parties are sufficiently similar to apply the first-to-file rule. In Michigan, "where a state officer is sued in relation to official acts[,] it is a suit against the state." *Longstreet v. Mecosta Cnty.*, 200 N.W. 248, 250 (Mich. 1924); *see, e.g.*, *Green v. State*, 186 N.W.2d 792, 794–95 (Mich. Ct. App. 1971) (affirming State of Michigan as proper defendant in negligence claim against city-owned prison facility because "state agency" had exclusive jurisdiction over facility). It is no surprise, then, that USDA has routinely corresponded directly

[2] For example, Attorney General Pam Bondi sent a letter to Minnesota Governor Tim Walz urging Minnesota to "partner with this administration" on "enforcing federal immigration laws," including by sharing all of the State's "records on Medicaid and Food and Nutrition Service programs, including [SNAP] data, with the federal government." Bondi Letter (Jan. 24, 2026) at 2–3, https://www.nytimes.com/interactive/2026/01/24/us/pam-bondi-walz-doc.html.

with the Governor in its attempts to obtain SNAP Data. (PageID.54, 57, 60, 89, 102 148, 187.)[3]

Finally, the United States can obtain complete relief from either party; if it prevails in the First SNAP Action, the United States loses nothing if it cannot also proceed against MDHHS as a nominally distinct party. *See W. Gulf Mar. Ass'n v. ILA Deep Sea Loc. 24*, 751 F.2d 721, 731 n.5 (5th Cir. 1985) (citation omitted).

Accordingly, just as the California court held (Ex. A, pp. 4–5), the second factor is met.

### C. The issues are sufficiently similar to support a stay.

Courts applying the first-to-file rule ask whether "the factual allegations and central theories of liability are the same in both directions." *Aero Adv. Paint Tech.*, 351 F. Supp. 3d at 1072; *see also Smith*, 129 F.3d at 361. "The issues need not be identical, but they must 'be materially on all fours' and 'have such an identity that a determination in one action leaves little or nothing to be determined in the other.'" *Baatz*, 814 F.3d at 791 (quoting *Smith*, 129 F.3d at 361); *see also Wash. Metropolitan Area Trans. Authority v. Ragonese*, 617 F.2d 828, 830 (D.C. Cir. 1980) (affirming dismissal of second-filed action where first-filed action presented "a closely related question").

[3] The parties' similarity across the two cases is so intuitive that this Court, in its August 7 Order denying a temporary stay, framed the case as follows: "The Government brings this action to require *the State of Michigan, through its Department of Health and Human Services*, to produce records and information[.]" (PageID.386 (emphasis added); *see also id.* (using "the Government" to refer to both Plaintiff here and defendant in the First SNAP Data Suit).)

The issues here are sufficiently similar. The central dispute in both cases involves the interpretation of 7 U.S.C. § 2020(a)(3). In Count One of the First SNAP Data Suit, Michigan alleged that USDA acted contrary to law, in violation of the APA, by taking the position that Michigan must furnish its SNAP data without the "data and security protocols agreed to by the State agency," as 7 U.S.C. § 2020(a)(3) instructs. (Ex. D, First SNAP Data Suit, 2d Am. Compl. ¶¶ 327–329.) In Count One of the instant case, the Government poses the exact same question from its perspective: "An agreement between USDA and a State Agency on data and security protocols for the transfer and storage of such records is not a condition precedent to a State Agency's obligation to comply with USDA's request for records under 7 U.S.C. § 2020(a)(3)." (PageID.37, Compl. ¶ 87.) This threshold dispute requires interpretation of the same statute in the same context. The First SNAP Data Suit will therefore resolve the Government's primary claim here, "leav[ing] little or nothing to be determined" in the instant case. *Baatz*, 814 F.3d at 791. And Michigan has been deemed likely to prevail on the merits as to that issue. *California v. U.S. Dep't of Agric.*, 821 F. Supp. 3d 1015, 1029 (N.D. Cal. 2026) (holding the "subject to data and security protocols" language in § 2020(a)(3) creates a condition precedent); *California v. U.S. Dep't of Agric.*, No. 3:25-cv-06310, 2025 WL 2939227, at *7 (N.D. Cal. Oct. 15, 2025) (unpublished case previously filed as ECF No. 23-3, PageID.450) (same).

The issues' similarities go well beyond questions of law. In the First SNAP Data Suit, for example, Michigan alleged that USDA's serial requests were

unreasonable. (Ex. D, First SNAP Data Suit, Compl. ¶ 152.) In the instant case, the Government transplanted that issue at the first opportunity: Its Complaint alleges that USDA is doubly entitled to Michigan's data because Michigan's objections to the proposed protocol were unreasonable. (PageID.37, Compl. ¶ 89.) That allegation, like the Third Records Request itself, didn't come out of nowhere; rather, according to the Government, Michigan's response to the Third Records Request is unreasonable—in part *because of* proceedings in the Northern District of California. (E.g., PageID.35, Compl. ¶ 80 (erroneously alleging Third Records Request "conform[s] with the exact guidance provided by the California Court" and was drafted to address Michigan's privacy concerns).) It bears repeating that the Third Records Request is identical to the final version of the Second Records Request USDA presented to the Northern District of California on March 30, 2026. (See Ex. A, p. 6.) As the California court identified, summary judgment proceedings, therefore, are likely to adjudicate the reasonableness of the protocol comprising the Third Records Request. (*Id.* ("Although the Third Data Request is accompanied by a revised protocol as to which this Court has not ruled, said protocol, given the evolving nature of the instant action, will, in all likelihood, be presented to this Court as well."); ECF No. 23-5, 4/15/26 Hr'g Tr., PageID.495-497 (court states, regarding Government's March 30 protocol, that it will "have to decide the matter one way or the other").)

The particulars of why (or whether) Michigan's position is reasonable overlap with the First SNAP Data Suit, too. In the First SNAP Data Suit, Michigan argued

that USDA could not support its alleged need for an unprecedented scope of data, including personally identifiable information (PII), by reference to its duties under the SNAP Act. (Ex. D, First SNAP Data Suit, 2d Am. Compl. ¶¶ 76–89.) In the instant case, the Government proactively defends the scope, and reasonableness, of its requests. (E.g., PageID.9, Compl. ¶ 23.)

Likewise, the First SNAP Data Suit included the issue of USDA's motives. In the First SNAP Data Suit, Michigan alleged that USDA's demands exceeded what is authorized in 7 U.S.C. § 2020(e)(8), insofar as there was evidence USDA would improperly furnish the data to other federal agencies. (Ex. D, First SNAP Data Suit, 2d Am. Compl. ¶¶ 325 (alleging "profound risk of sharing, if not clear intent to share, that data with DOGE, DHS, or other federal agencies"), 329 (alleging lack of assurances that data will be protected from re-disclosure or misuse), 333–38.) Michigan already has raised that issue in this Court. (PageID.417.) Regardless, the Government puts its own motivations in issue, insisting that it cannot comply with its statutory mandates without all of the requested data. (See, e.g., PageID.311.)

Even if there were some asymmetries on the margins—some modicum of daylight between the two operative demands, or a form of requested relief that is unique to one case or the other—cursory or close inspections of the two cases both reveal that the issues and the facts are more than similar. Pure symmetry between the first- and second-filed cases is not required; for purposes of the first-to-file rule, it is enough that they are "materially on all fours." *Baatz*, 814 F.3d at 791. As

interpreted by the Sixth Circuit, the first-to-file rule expressly permits some wiggle room between the two cases—likely to protect the rule against both (1) an overly rigid application that allows harms to judicial economy and comity to metastasize; and (2) end runs like the one the Government attempts by purporting to "supersede" a prior action simply by repackaging that action.

None of the Government's counterarguments withstand scrutiny. First, the Government has argued that the issues are not the same because the First SNAP Data Suit pertains *only* to whether USDA may disallow SNAP funding as a penalty for withholding data. (See PageID.360.) This is manifestly inaccurate as a matter of law. As set forth above, USDA's authority to obtain data without an agreed-upon protocol is a central, pleaded issue in the First SNAP Data Suit. (See also Ex. D, First SNAP Data Suit, 2d Am. Compl. at 84 (Request for Relief) (requesting declaratory and injunctive relief regarding lawfulness of data demands, disclosure, *and* initiation of noncompliance procedures).) Whether the original complaint and injunctions focused on the disallowance of funds is irrelevant to the issues raised in the First SNAP Data Suit's Second Amended Complaint. As the Northern District of California court confirmed, "the current posture of the [First SNAP Data Suit] is not a threat to withhold funds" (Ex. B, 8/14/26 Hr'g Tr., p. 12) and the form of relief at issue does not determine the similitude of the issues (Ex. A, p. 6).

As telegraphed above, USDA will argue in the alternative that the *facts* are too dissimilar, because the First SNAP Data Suit does not comprise USDA's "Third Records Request." (See PageID.354, 356–357.) But this is relevant, if at all, only to

distinguish the Third Records Request from the scope of the February 2026 *injunction*—not the core issues and facts of the First SNAP Data Suit at large. After all, the Third Records Request seeks the same data the first two request and the California court has determined that the security protocol accompanying the Third Records Request "will, in all likelihood, be presented" to it as well. (Ex. A, p. 6.) By issuing the Third Records Request in a form materially identical to what USDA put before the Northern District of California on March 30, 2026, USDA simply transplanted the status quo from that year-long litigation into a different document. That's not to say the Government's exercise in rebranding cannot have valid legal consequences, such as potentially resetting its notice obligations under 7 C.F.R. § 276.5(b). (PageID.410.) But courts entertaining first-to-file motions look to substance, not form, and the Government's rebranding of its most recent proposal in the First SNAP Data Suit does not affect whether the issues and facts overlap to a sufficient extent.

**D. Other equitable considerations support a stay.**

Other equitable factors confirm that a stay under the first-to-file rule would be appropriate. For instance, it's relevant that the Northern District of California "is in a position to render a unitary decision" on an issue that "exists in multiple districts." *W. Gulf Mar. Ass'n*, 751 F.2d at 731. It's also relevant that, as opposed to a "putative tortfeasor" who sues for a "declaration of non-liability," *AmSouth Bank v. Dale*, 386 F.3d 763, 786 (6th Cir. 2004), Plaintiff States needed to file the First SNAP Data Suit in light of USDA's threats beginning in 2025. Indeed, three

rulings in that case necessarily comprised findings that Michigan was facing imminent, irreparable harm.

The balance of harms also supports applying the first-to-file rule. In the interest of judicial economy, Michigan incorporates by reference its equitable arguments in its motion for a temporary stay (PageID.335–338) and its opposition to the Government's motion for a preliminary injunction (PageID.418–425). In short: The waste of resources addressed by the first-to-file rule has already begun, but it threatens to snowball if the Government obtains "preliminary" relief that moots Michigan's first-filed case; the two cases' factual and legal overlap mean that the Government has an adequate remedy available in the First SNAP Data Suit; the Government's interest in discharging its duties under the SNAP Act includes adhering to Congress' privacy protections; and, if this Court denies the Government's motion for a preliminary injunction (ECF No. 11), the California case will almost certainly result in a binding judgment that resolves the instant dispute, likely while this case is still in discovery.

Furthermore, although Michigan was unsuccessful in persuading the Northern District of California court to take the less-traveled path (*i.e.*, reaching out of its own jurisdiction to affect proceedings elsewhere), the instant motion reaches this Court in a traditional posture, at the suggestion of the California court, and requesting relief that is squarely within this Court's ambit: a stay of the proceedings before it under the first-to-file rule.

Finally, the Government's effort to move expeditiously toward preliminary injunctions in this and other cases, while simultaneously pumping the brakes on the first-to-file motion in the Northern District of California, gives the game away: The Government wants to obtain full relief in this Court before *any* court has even a chance to confirm the jurisprudential propriety of this redundant lawsuit. The Government's request for a preliminary injunction, in particular, is a naked bid to supersede the first-to-file rule. The emergency relief the federal government seeks significantly heightens each of the concerns the first-to-file rule guards against.

## CONCLUSION AND RELIEF REQUESTED

For the reasons stated above, this Court should stay proceedings under the first-to-file rule and hold this case in abeyance pending final disposition of *California, et al. v. United States Department of Agriculture, et al.*, No. 3:25-cv-06310 (N.D. Cal.).

Respectfully submitted,

/s/ Neil Giovanatti
Daniel Ping (P81482)
Neil Giovanatti (P82305)
Attorneys for Defendants
Civil Rights & Special Initiatives Division
525 W. Ottawa St.
P.O. Box 30736
Lansing, MI 48909
(517) 241-1050
PingD@michigan.gov
GiovanattiN@michigan.gov

Dated: August 21, 2026

**CERTIFICATE OF COMPLIANCE**

In compliance with Local Rule 7.3(b)(ii), I certify that this brief complies with Local Rule 7.3(b)(i) as this brief includes 4,260 words. Microsoft Word Office 365 is the word processing software used to generate the word count in the above brief.

/s/ Neil Giovanatti
Neil Giovanatti (P82305)
Assistant Attorney General

**CERTIFICATE OF SERVICE**

I hereby certify that on August 21, 2026, I electronically filed the above document using the ECF System which will send notification of such to all represented parties.

/s/ Neil Giovanatti
Neil Giovanatti (P82305)
Assistant Attorney General