# Exhibit B

Transcript of 08/14/2026
N.D. California Proceedings

**Pages 1-38**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Maxine M. Chesney, Judge

STATE OF CALIFORNIA, et al., )
)
Plaintiffs, )
)
vs. ) **NO. 3:25-cv-06310-MMC**
)
UNITED STATES DEPARTMENT OF )
AGRICULTURE, et al., )
)
Defendants. )
)

San Francisco, California
Friday, August 14, 2026

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff State of California:
CALIFORNIA DEPARTMENT OF JUSTICE
GOVERNMENT LAW SECTION
455 Golden Gate Ave., 11th Floor
San Francisco, CA 94102
**BY: LIAM E. O'CONNOR, Deputy Attorney General**
**PAUL STEIN, Deputy Attorney General**
**JOSEPH H. MEEKER, Deputy Attorney General**
**MARIA BUXTON, Deputy Attorney General**
**JULIE HEMING SEGAL, Deputy Attorney General**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

REPORTED BY: Layli Phillips, CSR, RPR, CRR
CSR No. 14402, Official U.S. Reporter

**APPEARANCES:** (CONTINUED)

For Plaintiff State of California:
CALIFORNIA DEPARTMENT OF JUSTICE
GOVERNMENT LAW SECTION
300 South Spring Street, Suite 9150-15
Los Angeles, CA 90013
**BY: JOSEPH H. MEEKER, Deputy Attorney General**

For Defendant United States Department of Agriculture:
U.S. DEPARTMENT OF JUSTICE CIVIL DIVISION,
FEDERAL PROGRAMS BRANCH
1100 L Street, NW Washington, DC 20005
**BY: TYLER J. BECKER, Counsel to the Assistant Attorney General**

**Also present: Brian Mizoguchi, Deputy General Counsel USDA**

**Friday, August 14, 2026** **9:05 a.m.**

P R O C E E D I N G S

---oOo---

**THE COURTROOM DEPUTY:** Calling Civil Case Number 25-6310, State of California, et al., vs. United States Department of Agriculture.

Will counsel please step forward and state your appearances for the record.

**THE COURT:** Okay. Let's start with plaintiffs' counsel, please.

**MR. O'CONNOR:** Yes. Good morning, Your Honor. Liam O'Connor on behalf of the State of California from the California Attorney General's Office.

**THE COURT:** Thank you.

**MR. BECKER:** Tyler Becker on behalf of the U.S. Department of Agriculture and Secretary Rollins, and I'm from the U.S. Department of Justice. Along with me is Brian Mizoguchi, who is from the Department of Justice. And Benjamin Kurland, who you usually see in this case, is on vacation this week.

**THE COURT:** Okay.

**MR. BECKER:** So he will not be attending.

**THE COURT:** Lucky him.

Okay. Anyone else you wanted to introduce?

**MR. O'CONNOR:** Happy to have my colleagues introduce

themselves if you would like, Your Honor, or I can do it for them.

So with me today is Paul Stein from the California Attorney General's Office as well as Maria Buxton, Joseph Meeker, and Julia Heming Segal.

**THE COURT:** All right. Do you plan to just be yourself, Mr. O'Connor, and yourself, Mr. Becker, dealing with the matter today, you know, that -- addressing the various points?

**MR. BECKER:** Yes, Your Honor.

**MR. O'CONNOR:** Yes.

**THE COURT:** All right. Fine. Okay. All right.

Now, we have two cases on this morning, and I'm calling your case first because I'm hoping it will be the shorter of the two. Partly because the other case has many different parties with many different issues, depending on what party you're talking about, whereas we've got essentially two parties. Okay.

Now, what we're dealing with here is a motion by the plaintiffs' states to enjoin the prosecution of related cases that have been brought by the defendant in four other states. And we have three other circuits involved but four different district courts: The Eastern District of Kentucky, the Western District of Michigan, District of Minnesota, Middle District of Pennsylvania.

And I wanted to ask you a couple of questions at the outset just so that I don't rely on a set of circumstances that may be out of date anyway.

My understanding is that the individual states in Michigan and Pennsylvania that are the defendants in those actions moved to stay those particular proceedings while these proceedings are going forward on the merits of the claims essentially, not this specific motion necessarily, but also could be this motion.

And those motions were denied in Michigan and in Pennsylvania, one state saying it looked like the issues were different and the other one saying you couldn't help, all right, at least the plaintiff hadn't made out as showing that they were the same, I guess, and they had the burden. The other two district courts are, as of the time I last checked, the question was still pending as to whether a stay should be issued.

Is that still the case as far as each of you understands the circumstances?

**MR. O'CONNOR:** Yes, in part, Your Honor. There are a little bit of nuances, but I think in the broad strokes, that's correct. So the four cases could probably be divided into two buckets right now. In Michigan and Pennsylvania, the briefing on defendant's motions for preliminary injunctions in those cases is going forward. Those PI motions will be fully briefed

as soon as the United States files its reply briefs.

**THE COURT:** Well, I think I noted that they denied the motion for the stay.

**MR. O'CONNOR**: Yes.

**THE COURT**: So that means things are going forward in those cases, right?

**MR. O'CONNOR:** Yes --

**THE COURT:** Okay.

**MR. O'CONNOR:** -- the nuance, just to clarify for the record, in the Pennsylvania case, the court has now filed a full first-to-file motion to stay those proceedings. So earlier in the proceedings --

**THE COURT:** Who filed the -- Pennsylvania filed the first-to-file motion?

**MR. O'CONNOR:** Yes, Your Honor.

**THE COURT:** Oh, okay. What's going on there?

**MR. O'CONNOR:** So earlier in the proceedings, as Your Honor noted, the courts in Pennsylvania and Michigan issued two orders on motions that sought temporary stays simply to stay the PI briefing until this court's hearing.

**THE COURT:** All right. But what about what's happening -- they filed the first-to-file motion in Pennsylvania but not in Michigan.

**MR. O'CONNOR:** There has not been one to stay the full proceedings in Michigan yet, Your Honor.

**THE COURT**: Or in Kentucky or in Minnesota.

**MR. O'CONNOR:** In Kentucky and Minnesota, the PI briefing is currently stayed while the courts are ruling on the first-to-file motions.

**THE COURT:** Okay. So there are first-to-file motions? There's a difference between moving to stay while I decide a first-to-file motion and somebody filing their own first-to-file motion. Now, you tell me there's a first-to-file motion was actually filed by Pennsylvania.

**MR. O'CONNOR:** Yes, Your Honor.

**THE COURT:** And that's pending?

**MR. O'CONNOR:** Yes. It was filed, I believe, yesterday.

**THE COURT:** Okay, pending. All right.

Now, as to the other three district courts, has there been a first-to-file motion filed?

**MR. O'CONNOR:** Yes. In Minnesota, Your Honor.

**THE COURT:** In Minnesota. Okay. And that is pending as well?

**MR. O'CONNOR:** I believe it is fully briefed, yes.

**THE COURT:** Okay.

Anything you want to add to that description on behalf of the defendant?

**MR. BLECKER:** Your Honor, the only thing I would add is that I think all four of the original motions that were --

were to stay proceedings just while this court decided plaintiffs' motion here, and now I believe Pennsylvania and Minnesota have both filed their formal first-to-file motions. I think that was clear from the plaintiffs' presentation.

**THE COURT:** Okay. So both Minnesota and Pennsylvania now have the equivalent of what's been filed in front of me?

**MR. BLECKER:** That's my understanding.

**THE COURT:** Okay. I think I will make a little note. I have a chart.

Okay. All right. So I've read your briefing. Of course, this is a kind of interesting issue. Doesn't necessarily come up in quite the way we have it. Usually it's a couple of parties with one getting there first, one getting there afterwards, and the judges look at it and see. The particular motion doesn't come up routinely. First to files come up quite often, but usually in the second court, not the first one.

You spend some time addressing whether the cases in the other states are similar to this one, with each of you either finding similarities or dissimilarities. I think it's pretty similar. The question is really whether I should do this, and I want to talk to you a little bit about the similarities or dissimilarities.

Many times you have a case where it's based on past facts. They have happened. It's kind of it. Here we have this evolving case. So when the defendant says, well, you know, you

haven't really ruled on what they are now looking at, which is whatever the most current protocol is. And I'll ask you a couple questions about how it differs or doesn't differ from what was given to me when we had kind of a status conference discussion earlier.

But even if it were different than what I've looked at formally, eventually I would get there, you know, because the case keeps going forward, and it morphs every couple of minutes, so once I made the ruling that you needed a protocol and couldn't rely on the later part of the statute, which was subsection (a), if you were dealing with something other than what the states are permitted to do as opposed to what is required to do. Then I said, okay, you need a protocol.

So then we got into what I knew was going to be a fight. Is this a workable protocol? Can the plaintiff states reasonably object to it? They have had a concern all along -- it's not a secret concern -- about what they fear is going to happen with the idea being that if they essentially provide the material to the Department of Agriculture, which is essentially them in another guise, that -- and then the department turns it over in a way that they would be themselves clearly precluded from doing, then you're kind of wandering something in a way that they feel they can't be a part of.

And I understand that. And the Department of Agriculture has endeavored to deal with that concern, and at one point they

thought that if they just kind of trapped the language of (e)(8) of the statute that that would be fine, and they sort of attributed to me an approval of it, and I said, no, I didn't approve it. I asked whether the plaintiffs thought that would be okay, and they did. And then they gave it another thought and decided it wasn't good enough.

But so that's still sitting around. That particular protocol was the last thing I saw. And I'm wondering -- maybe I'll ask Mr. Becker.

Were there any changes to that protocol that were given to any of the individual four states in which the department has brought its own motion?

**MR. BLECKER:** Your Honor, I believe the protocol that you viewed or saw before the last status conference, if there are any changes, they are very minor. It's -- so as a material matter, I think there are not material changes.

**THE COURT:** All right. And I took a look at that, and I'll tell you, with the sort of red line, green line, blue line, yellow line version that I got was very hard to read when you print it out. And I've done it both just in black and white and in color. And I was kind of interested -- let's see. This was submitted -- let's see. Who submitted this protocol with the colors? I don't remember.

But anyway, maybe someone can tell me, like what's the difference between green strikeout and red strikeout and -- I

don't know. Maybe somebody has some idea on the color code. If you don't, it was enough for me just to try and read it.

And, okay, but I did, and I saw where the defendant was trying to incorporate (e)(8) and its various subparts and, okay, and then other places that things have been changed.

Okay. All in all, it's pretty much the same case. In other words, the facts may be a little different; the initial issue is the same. And as I say, it keeps changing, and it's not static in my court, either. It could keep changing, frankly, in the other courts. Who knows what they are going to do.

So if you wanted to, you could argue that particular similarity/dissimilarity. But I don't think that's really the main issue here. But if anybody wants to, you know, say anything else, I guess, you could.

Maybe, Mr. Becker, if you have got any dissimilarity that I overlooked, maybe you want to tell me what that is. I did read the papers, just so you know.

**MR. BLECKER:** Yes, Your Honor. I think at the most basic level, there's three -- three dissimilarities. One is remedy, the other is that this involves a new demand, and the other is sort of related to remedy, and it's the difference in the particular action the plaintiffs filed in this court dealing with administrative funds withdrawal, whereas the Department of Justice has filed suits in the other courts

seeking to actually require the defendants to produce the data.

**THE COURT:** Right. Yeah. It's all swimming around the same concern about whether, one, you need a protocol, and if you do, is the one that the department proposed reasonable, and that the plaintiffs' rejection of it would be unreasonable or not.

If it were unreasonable, then the department's done all it can. It's not, as I noted earlier, that they can't simply unreasonably not get a protocol so that they don't have to give the information that they would have to give if a reasonable protocol were proposed.

But I don't know about the demand or not. Let's go back to our case for a second. I guess the pending motion for summary judgment takes into consideration that the current posture of the case is not a threat to withhold funds, although doesn't the statute say you have to withhold the funds if somebody doesn't turn over the information?

**MR. BLECKER:** Your Honor, the statute says that the Secretary shall hold the state in noncompliance. Of course, that has not happened. And usually in this kind of situation, that's an enforcement decision, discretionary decision, that wouldn't really be reviewable if the department did decide not to.

**THE COURT:** I was going to try and find that in my notes for a minute, how the statute reads. All right. I'll

pull the statute. I've got it here, too.

Anyway, it says that if somebody doesn't turn over what they are supposed to turn over, then the matter is supposed to be referred to the Attorney General. Then it goes on and says and even you don't return it, you've got to not give them the money.

And so anyway, but right now they are not doing that. Okay. So there's no threat: Give it up or we'll cut off your funds. At which point when that happened before, the plaintiff said, okay, we want you to enjoin them from cutting off our funds.

Now there's no -- there's like this nice request without -- without the threat of cutting off the funds, and so is that why the plaintiff is moving for summary judgment as opposed to pursuing now the specific injunctive relief? It's almost more like you want a declaratory judgment.

**MR. O'CONNOR:** Your Honor, I think our case puts at issue the enforceability of defendant's data demands, and there are multiple ways in which they could enforce them, but the question of the enforceability demand is what's at issue in this case. And as I think Your Honor noted, it's also now the same question at issue in the other cases.

In our case, we haven't brought another motion for preliminary injunctive relief to enjoin this third data request. I think in part because -- two reasons. One is that

the court issued a second preliminary injunction order maintaining the status quo, which was that defendants could not act upon the second data demand absent a material change in circumstances, in which case defendants are welcome to come back to the court to make their arguments to the court.

**THE COURT:** Well, okay. All right. So in any event, I guess we're talking about dissimilarities. And so I don't know that that makes a major difference, the demand, so to speak. In other words, if somebody asked for one thing in one court and one thing in another court, it doesn't really change the nature, sort of the heart of the case.

But so let's assume I say, okay, the various factors as far as the similarity of the parties, similarity of the issues, that that's been pretty much met. The real question, I say again, is should I be meddling in what's going on in four other districts? The courts have recognized this is really an extraordinary remedy when somebody asks one district court to essentially get involved in what's happening in another district court.

Now, so, you know, I've looked at the law. There are times that courts certainly have done this. The law allows -- my first question is, can I even do this? Yes, the law is clear I have the authority to do it. Courts have done it. Also, courts have not done it.

And at least one of the judges in this particular district

has said that the courts that have done it are essentially in the minority, and it's more common for the courts not to grant this particular relief because it can be brought in the very courts in which the, you know, assertedly improper second action as it's being raised or brought. So let me just get up to some of the concerns the courts have noted.

I think also the defendant may have presented to me that there is a statutory law that says that when the Attorney General brings the action that they bring it in, quote, an appropriate district court of the United States having jurisdiction of a geographic area in which the state agency is located. So if they are trying to seek their own relief, they have to go to where the particular state is.

This does not bind the plaintiffs. The plaintiffs could go where they want. There's not an assertion that venue is improper here in any way. But in other words, there's nothing really wrong with where the department is bringing the action.

Oh, yes, and here's the rest of it. Whether or not the Secretary refers such matter to the Attorney General, the Secretary shall proceed to withhold SNAP funding, okay, shall proceed to withhold, all in quotes. Okay.

Is the -- is the defendant arguing that all of the collected other states along -- that have brought this action along with California, that those states are essentially forum shopping?

**MR. BLECKER:** Yes, Your Honor, we are. And that's one of the reasons I think that the cases identify as a reason to not apply the first-to-file rule generally, even if you get into -- as a more, I think, an equitable matter of comity.

And I mean, the Department of Justice has brought these cases, as you noted, in the jurisdictions where the state agencies are. Those states or their governors' offices, which in the case is important, in -- in term -- in Kentucky and Pennsylvania has -- actually, the governors' offices are in this court, not the states or the state agencies. They -- they have decided to bring an action in California, whereas -- so we think it would be -- it would be pretty odd if a court in California would enjoin a -- the prosecution of an action in a forum where that state agency is.

Now, I don't think we're asserting that there is no jurisdiction in this court over the claims. Usually, you know, you need one person -- one state for venue or the like, but we do think that that's an equitable consideration that the court should apply.

**THE COURT:** Okay. Do you want to respond to that?

**MR. O'CONNOR:** Yes, Your Honor. We obviously object to the accusation that we engaged in forum shopping in this case. The San Francisco office of the California Attorney General brought this case on behalf of the State of California, and I can attest that our offices are located immediately

across the street. And the state agency that's impacted here is the California Department of Social Services, which has offices throughout the state including in the Northern District.

And in addition, the 23 states -- our 23-state coalition are led by California in this state. We're the ones that filed the briefs and that appear before you in this court, that the states have bound together to present their objections to defendant's data demands in an organized matter in one APA action, which we certainly have a right to do under the law. And the entire purpose of the APA is to ensure the federal government follows the law.

(Reporter interrupts for clarification of the record.)

**THE COURT:** Well, what your response is, nobody's saying they can't do it. The argument is: Why are they here instead of in their individual states? Your argument is, I gather, they decided it was easier to just have one big action, all right, is what that boils down to, I guess. Okay.

But anyway, the defendant is raising equity consideration, which are something the court considers. Another one, and I think one of the chief ones, is comity. All right. Now, we often look at comity when we're looking at whether there's been a pending motion -- or not motion but a pending action in state court, and then somebody comes to federal court, should we get involved in the state court matters.

But also, there's sort of federal-to-federal comity, and there are a number of cases that -- and I'm sure you're aware of them -- that essentially say that one should think very carefully before getting involved in some other court's business. All right. Particularly now that we've got two courts that don't even think that whatever is going on there is necessarily what's going on here, so -- and two that have not weighed in yet.

It's often the case that the second court, given their caseloads, will be very happy to defer to the first court. Say, okay, there's a case already. It's the -- what are you doing here? You've already got a case somewhere else. I have 250 cases. I have enough to do without this one. But that's, of course, behind the scenes and not part of any of the written opinion.

But the written opinions are essentially saying if somebody really wants to keep that case and to work on it, why are -- why is there another case telling them they can't do it? Now, of course, not one judge telling another judge, sorry, you can't do it. There's this middleman, the party that's bringing the case that's being ordered. But it boils down to essentially telling the other court they can't hear the case.

So that's a pretty extreme kind of position to take.

**MR. O'CONNOR:** Your Honor, may --

**THE COURT:** That's one of my -- just before you weigh

in because you will want to be the first to weigh in on this, I'm sure, because the comity idea is favoring the defendant's position in this matter more than the -- more than the plaintiffs'. And it's one that I am particularly, particularly concerned about.

And we can look at various factors. Our case has been pending a considerable period of time. Oftentimes when these kinds of motions have been granted in the first court, it's been because the first court has been -- no, I take that back. I have to think about that for a minute.

If the -- this has been pending a rather long time with only new in the other court, then it's more of a reason to grant the motion because as we do have here a longer pending matter with a number of rulings being made and certainly addressing the various issues and statutes that pertain, so that's one factor to kind of weigh in the plaintiffs' favor.

In the same light, the states that are most involved with what these particular state agencies do are the states where the agency is located, not some other state. So that kind of goes the other way.

There's a feeling, not an actuality, but a feeling a little bit of a national injunction idea. I don't think it meets the requirements because I'm not being asked to help out some agency in a state that it isn't a party to this action and bring them within some relief that they themselves haven't

asked for or had a chance to litigate elsewhere, but there's -- particularly because of the multiplicity of orders, and, of course, the plaintiff can say, well, the defendant's going out, they are bringing these in as many case -- you know, courts as they can, that they are really forum shopping because this court has ruled against them in part.

But, you know, you can make arguments on both sides on this, and maybe that's why this is a discretionary call more than one that's dictated by any particular statute.

So let me say that the comity is one of the things that particularly concerns me and maybe have Mr. O'Connor address that first.

And then I'll get to you, Mr. Becker.

**MR. O'CONNOR:** Thank you, Your Honor. I agree that the usual circumstance would be that you have two cases that are filed at approximately the same time and there is simply a question of which of those two cases should go forward. And in that case, comity might favor deferring to the second court.

However, this case isn't a case that presents that usual circumstance. And as said, defendants have already filed four duplicative actions, and they indicate in their opposition brief that they intend to file up to 19 more against each of the plaintiff states in this case.

That means that a minimum of 4 and up to 23 additional district courts across the country are going to have to divert

their time and attention from their dockets to consider first-to-file motions that look just like the motion before you and preliminary injunction motions that look very similar to the preliminary injunction motion you ruled on in February, and it's a summary judgment that you will soon consider in this case.

And so I think actually in these circumstances, the purposes of the first-to-file rule are best served by an injunction. Those purposes are to avoid inconsistent decisions among courts and to avoid an undue burden on the judiciary. Here there's a poignant risk of insignificant decisions because defendants aren't just going to other courts and saying that they want those courts to accept your holdings but to rule on a new protocol language. Instead they are going to other courts and they are arguing that this court got it wrong --

**THE COURT:** No, no. I haven't ruled on their current protocol.

**MR. O'CONNOR:** Yes, Your Honor -- sorry -- this court got it wrong on the legal question whether Section 2020(a)(3) requires agreements to a data and security protocol as a condition precedent to data production. That's an issue they have lost on in this court, and they're now seeking to relitigate it in all of the other courts.

**THE COURT:** Okay. In other words that -- are they relying on (e)(8) in the other courts as opposed to subsection

(a)?

**MR. O'CONNOR:** I think primarily the briefing in the other courts thus far has been focused on (a)(3). And defendants, without citing this court's opinion, make the same arguments that have been made to this court, which is that the "subject to" phrase in (a)(3) doesn't mean what it says and that the United States Department of Agriculture can collect states' records without any agreed-upon data and security protocol.

**THE COURT:** Ah, okay. So they are relying on (a)(3) but arguing they don't need the protocol?

**MR. O'CONNOR:** Correct.

**THE COURT:** Okay. All right.

**MR. O'CONNOR:** And if I --

**THE COURT:** That's interesting.

**MR. O'CONNOR:** Just one point on comity, Your Honor. I think in these circumstances, given the sheer number of duplicative actions and that defendants are seeking to relitigate this court's rulings, comity actually weighs in the opposite direction. This court's rulings should be given deference as the first court to consider this issue, having spent a considerable amount of time with us and on the issues in this case.

And I would encourage the court -- I think the best case on this point is the --

**THE COURT:** Which case? You know, you have a very rapid way of speaking, and it's not just rapid. What you do is you kind of merge words as you continue with your sentence, thus losing essentially whatever force you're trying to convey here.

So what's the name of the case again?

**MR. O'CONNOR:** *Beauperthuy vs. 24 Hour Fitness*.

**THE COURT:** Okay. All right. And that was -- let's see if I have -- probably have it up here. Okay. Yeah. It's a -- how are you pronouncing it? *Beauperthuy*?

**MR. O'CONNOR:** That's my best guess, Your Honor.

**THE COURT:** All right. I guess that's pretty close. All right. Now, this goes back a while to my now former colleague Sam Conti, rest in peace, who issued this order, and he went through the various factors. He looked at, in that particular case, the anticipation, I think, as being a key factor. But let me go back and look at that for a second, anticipatory filings.

What in particular did you like about his decision? In other words, what do you want me to look at in what his analysis was?

**MR. O'CONNOR:** I think the court spent significant time considering how the number of later-filed cases increases the risks of inconsistent rulings, especially when the party is seeking to relitigate the issues that were decided by the first

court. And in addition, the number of duplicative cases also increases the unnecessary burden on the judiciary.

**THE COURT:** What they had -- this is kind of wild. They had a class action, and he certified the class, and then he decertified it. And they ended up with 273 separate cases in which the plaintiffs petition to compel arbitration, and then the defendant went elsewhere and was endeavoring to also compel arbitration.

It kind of threw me off a little bit. Apparently everybody thought it should go to arbitration, but they had some idea about, I don't know, they didn't like something about how it was going to be conducted or whatever. They had dueling petitions to compel arbitration. I mean, usually you have a petition to compel and somebody opposes it. Here, two parties want to go to arbitration, but they wanted to do it differently.

Okay. All right. So let's see here. They had -- they went to 20 district courts, right? Okay.

All right. So you think that would be the closest to what we've got here because this is a case that had so many individual parties.

**MR. O'CONNOR:** I think that would be the closest. Another decision would be *Whiteman vs. Amazon*, Your Honor. Another case where there is a risk of up to 20 district court proceedings across the nation, which I think is the same risk

that we face here.

**THE COURT:** Okay. Let me go back to what happened here for a second. One of the problems here is he did think this was something of an anticipatory kind of situation in a way. Well, no. Let me take that back. That's whether you would not grant that, a motion.

Let's see. Listen to this fact. Plaintiff presents -- plaintiffs presented -- this is the quote: "Plaintiffs presented 983 demands for arbitration before JAMS" and then filed a motion to compel arbitration about a month later.

So the court said, all right, it's not anticipatory that they broke down in their negotiations.

They said they were trying to cooperate. Okay. So that -- they didn't find anticipatory.

Okay. Well, it has some similarities, no question. I can listen to what Mr. Becker may want to say about that. On the comity idea, part of it is you have this argument of we're really doing them a favor. All right. But -- by relieving them of all this extra work that they wouldn't have to do.

But, again, one can say, well, shouldn't that be their decision? In other words, whether they want to get involved or not in the case, shouldn't that be maybe that court's decision? So -- but I do understand there's a risk of inconsistent rulings.

And one of the things that the plaintiff pointed out in

terms of harm going one way or the other -- in other words, if I rule one way, is one side harmed, is the other side harmed -- is that if the court in any of these other districts then orders the plaintiff -- I'm sorry, well, the defendant, so -- but anyway, what are our plaintiff states to turn the material over, that then kind of guts what we're doing here. And their only, I guess, relief would be to take that up as a ruling rather than turn it over if they want to turn it over.

Okay. What do you want to say in response now?

**MR. BLECKER:** Yes, Your Honor. I found it notable the couple of cases that my -- that my -- not colleague -- I should say that counsel mentioned are not cases that involve the federal government, enforcement actions, or anything like that.

I think that that's really telling here that the -- in plaintiff's brief -- briefing, they don't cite any sort of federal government actions where courts had used the first-to-file rule to actually enjoin proceedings in another court or to enjoin those parties from proceeding in another court.

And I think that that's telling here. And I think Chief Judge Boasberg of the U.S. District Court in DC's opinion in *WPATH* is very helpful on this because he's exercising the kind of equitable considerations, and he doubted whether even applying something like the first-to-file rule or this consideration of duplicative actions even applies when the

federal government is bringing enforcement actions.

Partly because I think there's a concern that if the federal government starts down a process that may lead to litigation or may lead, in this case, to some sort of SNAP administrative disallowance that if you enjoin -- if you allow the party to then bring a case in their preferred forum before -- when the party knows that that -- probably down the road, the government is going to bring an enforcement action, and then ask the court that you bring the case in to enjoin the later enforcement action, that is a significant comity issue.

But it also really gets into separation of powers concerns and just issues of like what -- issues of whether the government even has the ability to enforce federal law in the jurisdiction that the particular statute provides.

And we think that's another reason that -- I don't know if it -- that this really goes underneath the first-to-file factors or is more of just an equitable consideration as to why we think that these cases -- that those cases that counsel cited are distinguishable.

**THE COURT:** That's an interesting point. In other words, distinguishing most other cases, if not almost all of them, on the fact that we have a government agency who is trying to bring a case and somebody is telling them they can't bring it, essentially, as opposed to them participating in a case and then having rulings made one way or the other, because

obviously none of you have, you know, orders being made, but okay. And certainly Judge Boasberg is a highly respected jurist. Okay.

What else? What else did you want to bring up? I'll take another look at that, too.

**MR. BLECKER:** Yes, Your Honor. I think that one thing we would like to emphasize here is just that 7 U.S.C. 2020(g) specifically, it actually contemplates that there are two separate actions here. There is a -- if the -- if a state does not comply with the SNAP Act or how USDA interprets the SNAP Act, as you noted earlier, USDA can refer that matter to the Attorney General who can seek an injunction action where that state agency is located, or the -- and -- and almost required by the statute, as Your Honor said, the Secretary can withdraw SNAP administrative funds subject to administrative and judicial review under Section 2023 of this title.

So the statute itself here, we think, is another reason -- thing the court should consider, that even if first-to-file considerations were relevant here that Congress has already made the decision that there may be -- that two separate actions may be appropriate in this particular context.

Now, I don't think USDA has exercised its authority a lot to send its enforcement actions to the Attorney General, but that -- but that still suggests that the statute itself contemplates that multiple courts may be involved here.

**THE COURT:** Well, it certainly -- that is an interesting point because if there are multiple states that are involved in the particular dispute, and if the, you know, the department is required to bring an action, you're going to have to bring it in all the different states, and that's kind of interesting. I hadn't really thought about that, either.

I don't know why these papers that I've got at the moment are kind of out of order. Let me look at something for a minute.

**MR. O'CONNOR:** Your Honor, may I respond to the points that Mr. Becker raised?

**THE COURT:** Yeah. Before you do --

**MR. O'CONNOR:** Sure.

**THE COURT:** First, I just wanted to -- I'm not sure. I have one case up here that I wanted to look at, but let's see. No, I do have it. Okay.

I just want to make sure I have Judge Boasberg's decision. I do. So that's fine.

Okay. Anything else that you wanted to raise? That's a couple of interesting points. Okay.

**MR. BECKER:** Yes, Your Honor. On the showing that plaintiffs need to make here, we believe that plaintiffs need to meet the typical injunction factors. There was some dispute about this in the briefing, but at the very least they need to, as Chief Judge Boasberg said in *WPATH*, make a truly compelling

showing when you're trying to enjoin other -- the parties from pursuing other litigation.

And we don't think that plaintiffs have really met that here because the harms that they are alleging from potentially having to file briefs in other cases and litigate those cases are just not things that courts have long said are irreparable harms.

And I think that that goes back to -- there's a Supreme Court case that we cite in our brief involving the FTC. And I think that the FTC context, which is where Chief Judge Boasberg's opinion is from, is particularly helpful here just because there is this concern that I mentioned about filing pre -- filing suits -- states filing suits before the federal government decides to file an enforcement action.

**THE COURT:** Okay. All right. I guess we're back to you, Mr. O'Connor.

**MR. O'CONNOR:** Thank you, Your Honor.

I think Judge Boasberg's concern in the *WPATH* case is that a regulated party could file anticipatory litigation in an attempt to run to court and to beat the federal government in its attempts to file an enforcement action.

But that's simply not the circumstances we have here. We filed this case more than a year ago because defendants were demanding that we unlawfully comply with their data demands, as this court held in its first preliminary injunction order.

That was, of course, well within our rights under the APA, the entire purpose of which is to ensure that the government follows federal law.

Additionally, I think it's significant that in Judge Boasberg's opinion, he notes that the first action had not progressed to the point where the government was merely seeking trying to relitigate issues already decided in the first action and the second action.

And here defendants are expressly asking other courts to disagree with this court's holding about what 2020(a)(3) means. And additionally, the *WPATH* case involved just one second action against a single party. Here we have one case with 23 plaintiffs before you where all of their objections to defendant's data demands can be resolved in one fell swoop. By contrast, defendants are suggesting that instead of having this case resolved in one court, it should be resolved in up to 24 different courts across the country.

**THE COURT:** Let me ask you a question about how our case is proceeding. It seems to have come to something of a grinding halt because of the discovery dispute. Judge Westmore has not ruled on whatever is going on in that regard.

**MR. O'CONNOR:** The discovery dispute matters are briefed before her but pending still, yes.

**THE COURT:** They are still pending?

**MR. BLECKER:** Yes, Your Honor.

**THE COURT:** And that will affect the ability to go forward on the summary judgment. Okay.

Do you have any recollection of when that was submitted?

**MR. O'CONNOR:** I do not, Your Honor. I believe it was about a couple months ago in late -- June 18th.

**MR. BLECKER:** Yeah.

**THE COURT:** Okay. Okay. Okay.

**MR. O'CONNOR:** Could I just raise one point?

**THE COURT:** I might have another couple of just questions, so go ahead though.

**MR. O'CONNOR:** Yeah. Just one point about I know the federal government is concerned about it being unable to get a decision on the enforceability of the data demands until there is summary judgment in this case, and it's -- it is frustrated that summary judgment is taking so long.

But this isn't a case where the government is unable to get a determination on the enforceability of its data demands without these later-filed suits. At the status conference, the court told the government, and we agree, that it didn't see a need for another preliminary ruling on the merits of defendant's data demands.

But if defendants think that the circumstances have changed, they are welcome to come back to this court and to file a motion to dissolve the second preliminary injunction, which would allow them to begin enforcing the data demands if

they are in fact lawful. But there's no need for all these other courts to enter the fray at this late stage.

**THE COURT:** Okay. I think I jotted down some questions before the hearing that I think have been answered. Let me just ask -- maybe I'll ask Mr. Becker.

In our case, there was a demand for certain kinds of data. Is the demand in the other cases any different? In other words, yeah, asking for different data, either a smaller group, other group, different group?

**MR. BLECKER:** No, although I believe that given the time period that there may be -- like the new data demand asks up through the date of the new data demand.

**THE COURT:** Which is in terms of the period encompassed?

**MR. BLECKER:** Yes, Your Honor.

**THE COURT:** Okay. Just as long as I have that point. Okay.

Well, you know, it's an interesting question. And it's not one that calls immediately for a response one way or the other because each of you has some good points to make.

I'm still very concerned about the comity idea and the thought that, you know, if I had a case in front of me and I was asked to rule on certain things, I really wouldn't want some other judge coming in and meddling.

Now, these are not all in the same circuit. We recently

had a Ninth Circuit conference. If I ran into one of those people who was trying to tell me what to do, I might say, hey, what are you doing? You have your case, I have my case.

So I'm just a little bit, as I say, wary about taking an action that is not absolutely called for -- I guess I could ask Mr. Becker a question.

Why did you wait as long as you did to, you know, bring these other actions?

**MR. BLECKER:** Your Honor, the federal government didn't see a need to bring them earlier and decided to bring them after plaintiffs failed to comply with the third data request.

I will say that here plaintiffs have -- one of the -- and one of the reasons is plaintiffs have not actually amended their complaint to include this third data request, and that as a result of that and the fact that the final -- that any arguable final agency action has been superseded by this request and those earlier requests have been withdrawn, it's not even clear that the government can get a ruling from this court on that, especially where a final agency action is jurisdictional in the Ninth Circuit.

So the plaintiffs' failure to comply and then not amend their complaint to include this third data request is certainly a -- one of -- one consideration here, because it may not enable the government to be able to get a ruling on this

request in the end.

**THE COURT:** Well, I guess also the parties were discussing trying to come to an agreement on a protocol. And what I see the dispute on this to be, by the way -- I don't know how and when you can resolve it, you may not be able to -- is that the plaintiff is just concerned that the data is going to be given to Homeland Security and to be used for its own purposes.

There is an -- under 2020(e)(8), an allowance for the agency or in this instance, I guess, the department, to do what it needs to do for the administration of the program. And I think that the plaintiff is concerned that the department is going to say in some way that they need to give the information to Homeland Security in order for Homeland Security in some way to give them information that they need to run the program.

And if that is the position that is being taken by the department, there would be a number of questions raised about what do they have that the department doesn't have? Why do you have to give the data to them? Can't you just get data from them to you? Various questions like that, which the department may well have answers for if it really does want to give the information to the Department of Homeland Security.

And if the plaintiff then wants to challenge that as not being reasonable for whatever reason or to say, oh, you say that, but in the past, that isn't what you've done, and try and

make some pattern of practice argument about what's really in the department's mind, I guess that could all be heard if we get to that. I don't know if there's any way you can bridge it.

But that's what it sounds to me is like going on in the background that hasn't been fully fleshed out as to what they may be objecting to in the protocol that I saw in which the department did endeavor to track (e)(8), but there were things -- well, I guess they could say about in some way and I -- and I certainly made no ruling about it and would want to hear from the parties. But if there's any way to work that out, that's really where I think the effort ought to go.

And I can understand how somebody might say, okay, you know, we got all these cases here. Maybe it's easier than scattering, you know, having to go to 20-some other states and litigate. We'll just package them up along with them and hear them all here, and then maybe we can work it out, and certainly it did take time to try and do that. So that may have caused some of the concern or delay.

And in any event, you know, I wish there was some way you could come to some accord, but I know it's hard. And it's always nice to see Mr. Mizoguchi and all, but you know, certain times people are just laboring under certain restrictions, and they may not be able to avoid those. I don't know.

Okay. I think I have a pretty good picture of, you know,

what's going on here. I want to go back and look at the key cases that both of you relied on and all the others, too.

I can tell you, not to be a bearer of bad news, but I can tell you that I'm leaning toward denying it because of the concerns I have and because it isn't the only manner of relief that the plaintiffs can obtain here. They can go, as they have in two of the states and brought to those courts' attention, the fact that there is another action here. If those courts have a different view about the effect of this action on what they are doing, I don't know that it's for me to tell them they are wrong. All right?

So I will give you a written order, and I think we need one. But before I -- my tentative is essentially denied, but I am not totally nailed down to that. All right. And I think that Mr. O'Connor has made some good arguments that would certainly support a decision the other way. That's why I say, I could make this decision one way or the other giving more weight to some of the concerns they have raised or more weight to some of the concerns that have been raised by the defendant.

And I've already given it quite a bit of thought, but I kind of want to give it some more thought. And then I will try to get this out as quickly as I can, particularly to the extent that a couple of courts seem to be waiting to see what I'm going to do. So I would rather not keep them dangling, either.

I want to thank you both for the briefing that you did on

this. I think it's been very thorough and very helpful in an area that, you know, has a lot of different aspects.

And so I'm taking the matter under submission. I'll give you a ruling as quickly as I can. And I guess that's it for this case at the moment. All right.

**MR. O'CONNOR:** Thank you, Your Honor.

**MR. BLECKER:** Thank you, Your Honor.

**THE COURT:** Thank you, all. All right.

Now, we'll take a very brief break for the reporter before we launch into the next case because, if possible, I would like to have that other hearing without an interruption. Okay. Let's say, I don't know, ten minutes should do it.

(Proceedings adjourned at 10:02 a.m.)

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE: 14th of August, 2026

Layli Phillips, CSR No. 14402, RPR, CRR
Official United States Reporter